FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR -3  PM 3: 04

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**CALVIN WATERS**                                      **CIVIL ACTION**

**VERSUS**                                             **NO. 05-0200**

**JO ANN B. BARNHART**                                 **SECTION "N" (3)**
**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION**

## REPORT AND RECOMMENDATION

Plaintiff, Calvin Waters ("Waters"), seeks judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his claim for disability insurance benefits under the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the undersigned United States Magistrate Judge for review and submission of a report and recommendation. Having reviewed the administrative record, pleadings, the parties' cross motions for summary judgment and the applicable law, the undersigned United States Magistrate Judge RECOMMENDS that the Commissioner's Motion for Summary Judgment be DENIED, the Commissioner's decision be REVERSED and that this case be REMANDED for further proceedings consistent with this report.

1

# I. PROCEEDINGS

On August 27, 2002, plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Title II and Title XVI of the Social Security Act ("Act").[1]  Plaintiff claimed inability to work since June 19, 2002 due to hypertension, kidney, gout and back problems.[2]  Plaintiff's prior application for benefits was denied on June 18, 2002 and that decision was not appealed;[3] accordingly, the onset date for plaintiff's subsequent applications for benefits was restricted to June 19, 2002.[4]  On November 6, 2002, plaintiff's applications for DIB and SSI benefits were denied.[5]  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").[6]

On December 9, 2003,  ALJ Gary L. Vanderhoof conducted an evidentiary hearing in New Orleans, Louisiana.[7]  Plaintiff  was represented by counsel at the hearing and Vocational

---

[1]*See* Application for Disability Insurance Benefits dated August 27, 2002 [Adm. Rec. 54-61].

[2]*See id.* at 54; Disability Report/Adult [Adm. Rec. 68].

[3]*See* ALJ John R. Burgess' Decision dated June 18, 2002 (finding "no disability" at any relevant time through the date of decision) [Adm. Rec. 33-39].

[4]*See* Disability Report/Field Office [Adm. Rec. 76].

[5]*See* Denial of Benefits dated November 6, 2002 (noting hypertension and not controlled but absent evidence of end organ damage, history of gouty arthritis which is asymptomatic at this time and no evidence of *disabling* back or kidney problems and concluding that the plaintiff is capable of returning to his past relevant work as a security guard as it is usually performed in the national economy) [Adm. Rec. 41].

[6]*See* Request for Hearing dated November 19, 2002 [Adm. Rec. 46].

[7]*See* Transcript of Administrative Hearing [Adm. Rec. 358-393].

2

Expert (VE) Patricia Ehlinger also appeared and testified.[8]  On March 26, 2004, ALJ Vanderhoof

issued "Notice of Decision - Partially Favorable."[9]  In his written decision, the ALJ found

Waters not entitled to a period of disability or to Disability Insurance Benefits because his

disability insured status expired on December 31, 2002 and plaintiff did not demonstrate that he

was disabled on or before that date.[10]  However, because the plaintiff demonstrated disability as

of July 18, 2003 which continued at least through the date of decision, the result was partially

favorable.[11]  As explained in more detail below, the ALJ determined that the plaintiff was

disabled but only after his stroke on July 18, 2003, thereby precluding plaintiff's eligibility for

DIB.

On April 16, 2004, plaintiff filed a Request for Review of the hearing decision and order,

arguing that the proper onset date is on or prior to December 31, 2002.[12]  The Appeals Council

denied the plaintiff's request for review, finding that the additional information provided in the

form of an April 24, 2004 letter from Dr. John Wise and May 19, 2004 correspondence from

plaintiff's counsel provided no basis to change the ALJ's decision.[13]

---

[8]*Id.*

[9]*See* Notice of Partially Favorable Decision dated March 26, 2004 [Adm. Rec. 16-18].

[10]*See* Decision of ALJ Gary L. Vanderhoof dated March 24, 2004 [Adm. Rec. 20].

[11]*See id.* (advising Waters that the Social Security Administration would advise him
regarding the nondisability requirements for SSI payments and, if eligible, the amount and the
months for which payment would be made) [Adm. Rec. 24].

[12]*See* Request for Review of Hearing Decision/Order dated April 16, 2004 [Adm. Rec.
13-15 ].

[13]*See* Notice of Appeals Council Action dated December 23, 2004 [Adm. Rec. 4-9].

On January 28, 2005, plaintiff filed this suit in federal district court seeking review of the final decision of the Commissioner and an order establishing an earlier date for onset of disability.[14]  Having exhausted all administrative remedies, this matter is ripe for review.

## II.  JUDICIAL REVIEW

### A. Standard of Review

The function of the court on judicial review of a denial of benefits is to determine whether "substantial evidence" supports the final decision and whether the Commissioner used the proper legal standards to evaluate the evidence.[15]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[16]  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[17]  A district court may not try the issues *de novo*, re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if the district judge believes that the evidence weighs against the Commissioner's decision.[18] Nevertheless, the Court must carefully scrutinize the entire record to determine whether

---

[14]*See* Plaintiff's Motion for Summary Judgment at p. 3 (noting that, unless otherwise indicated, the motion refers only to the period between June of 2002 and July 18, 2003) [Fed. Rec. Doc. No. 11].

[15]42 U.S.C. § 405(g); *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000); *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir. 1999).

[16]*Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir. 1995).

[17]*Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Newton,* 209 F.3d at 452.

[18]*Masterson,* 309 F.3d at 272; *Newton,* 209 F.3d at 452.

4

substantial evidence exists to support the ALJ's findings.[19]  "In short, conflicts in the evidence are for the Commissioner and not for the courts to resolve."[20]

If proper principles of law were applied, and if the Commissioner's decision is supported by substantial evidence, the findings are conclusive and must be affirmed.[21]

## B. Eligibility for Benefits under the Social Security Act

To qualify for Social Security income benefits, the plaintiff must meet the requirements set forth in the Social Security Act.[22]  Specifically, the plaintiff must be under age 65, file an application for benefits and be under a disability as defined by the Act.[23]  Those claiming benefits under the Act have the burden of showing the existence of disability.  Proof of the existence of a "severe" impairment alone does not establish "disability" within the meaning of the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."[24]  Therefore, a showing of general disability is insufficient; in addition, a claimant must prove the inability to engage in substantial gainful employment.

---

[19]*Greenspan v. Shalala,* 38 F.3d 232, 236 (5ᵗʰ Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995); *Anthony v. Sullivan,* 954 F.2d 289, 295 (5ᵗʰ Cir. 1992).

[20]*Masterson,* 309 F.3d at 272 (citations and internal alterations omitted).

[21]*See id. (citing Richardson,* 402 U.S. at 401)

[22]*See* 42 U.S.C. § 423(a) (2001).

[23]*See* 42 U.S.C. §§ 416(I), 423(a) (2001).

[24]42 U.S.C. § 423(d)(1)(A) (2001).

Establishment of "disability" is a dual process. First, the claimant must prove that he suffers from a medically determinable impairment.[25] Second, the claimant must prove that his impairment or combination of impairments render him unable to engage either in the work he previously performed or other substantial gainful employment that exists in the national economy.[26]

The Commissioner utilizes a five-step sequential evaluation to aid in the determination of whether a claimant is disabled.[27] A finding that the claimant is not disabled at any step is conclusive and ends the inquiry.[28] The five-step analysis was cogently restated in *Shave v. Apfel*:

> First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.[29]

---

[25]42 U.S.C. §§ 416(I)(1), 423(d)(1)(A) (2001).

[26]42 U.S.C. §§ 416(I)(1), 423(d)(2) (2001).

[27]*Newton*, 209 F.3d at 453 (5th Cir. 2000).

[28]*Watson*, 309 F.3d at 272; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[29]*Shave v. Apfel*, 238 F.3d 592, 593 (5th Cir. 2001).

In conjunction with steps four and five, the Commissioner utilizes a "residual functional capacity" (RFC) assessment to determine whether the applicant, notwithstanding severe impairment, has the physical and mental ability to perform work-related activities on a regular and continuing basis as generally required by competitive, remunerative work.[30]  Thereafter, the Commissioner determines if the claimant has the physical and mental ability to perform her past relevant work.[31]  If the claimant's RFC meets or exceeds the requirements of her regular previous employment, the disability claim is denied.[32]  If not, the inquiry proceeds to step 5 where the Commissioner has the burden to show that the claimant can do work as it is generally performed in the national economy.[33]

## III.  ASSIGNMENTS OF ERROR

It is uncontested that the plaintiff has not performed substantial gainful activity since at least July 11, 2000 and that he suffers from a combination of impairments considered "severe" within the meaning of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  Plaintiff assigns error in following respects, to wit:

(1)     The ALJ and/or the Appeals Counsel failed to give proper weight to the opinion of the plaintiff's treating physician (Dr. John Wise), failed to provide reasons for rejecting his opinion and/or failed recontact the treating source to resolve any perceived inconsistencies;

---

[30]RFC is defined as "what you can still do despite your limitations" and has three components, to wit: physical abilities, mental abilities, and other abilities affected by impairments.  20 C.F.R. § 404.1545(a) (2002); Soc. Sec. Ruling 96-8p, 61 F.R. 34474 (July 2, 1996).

[31]*See Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987).

[32]*See* 20 C.F.R. § 404.1561 (2002).

[33]*See* 20 C.F.R. § 404.1566 (2002).

7

(2)     In finding that the plaintiff could perform his past relevant,
        inasmuch as the VE testified that the plaintiff could not return to
        his past relevant work as a security guard either (1) as he
        performed it or (2) as that job is usually performed in the national
        economy; and

(3)     Because the plaintiff was "closely approaching advanced age" at the time
        of decision, he should be found disabled under Medical-Vocational (Grid)
        Rule 201.10 since June of 2002.

The Commissioner argues that the final decision is supported by substantial evidence,

noting that, for the time period of June of 2002 through July 17, 2003, the record contains very

little medical evidence.  The Commissioner highlights that the *only* medical evidence regarding

the time period in question is the October, 2002 report of consultative examination by Dr.

Miljana Mandich, which revealed mostly *normal* clinical findings.  The Commissioner contends

that Dr. Wise's December 8, 2003 report[34] is not inconsistent with either Dr. Mandich's report or

the ALJ's decision.  In this regard, the Commissioner notes that Dr. Wise's statement regarding

plaintiff's functional restrictions was issued after the date that the plaintiff's insured status

expired and during the time frame that the ALJ found Waters disabled under Title XVI of the

Act.  The Commissioner argues that Dr. Wise's opinion is entirely consistent with the ALJ's

decision that plaintiff was disabled only after July 18, 2003 and not before.  In any event, the

Commissioner submits that Dr. Wise fails to explain why his findings post-CVA pertain to the

period prior to December 31, 2002.  Finally, the Commissioner contends that the ALJ's

---

[34]*See* Correspondence of John M.Wise dated December 8, 2003 (noting that plaintiff
suffered a stroke/CVA in July of 2003 which caused chronic dizziness, numbness and
neuropathy affecting his right leg, *inter alia*, and that reason in addition to labile hypertension,
chronic renal failure, gout, etc., Waters should qualify for social security benefits without any
problem) [Adm. Rec. 134].  *See also* Functional Assessment executed by Dr. John Wise dated
September 3, 2003 (also specifically noting that plaintiff suffered from a stroke in July of 2003)
[Adm. Rec. 132-133].

hypothetical question included all of the plaintiff's impairments and that the VE's response
supplies substantial evidence to support the finding that Waters could return to his past relevant
work as of December 31, 2002, when his insured status expired.

## IV. EVIDENTIARY RECORD

### A. Medical Evidence

It is undisputed that as of June 18, 2002, plaintiff was <u>not</u> disabled and was capable of
performing his past relevant work as a security guard, light semi-skilled.[35]  In the subsequent
decision  at issue dated March 24, 2004, ALJ Gary L. Vanderhoof noted that Waters' case had
been adjudicated through June 18, 2002 and he found no reason to disturb that final
determination.[36]  Indeed, plaintiff's appeal and motion for summary judgment refers "only to the
period between June, 2002 and July 18, 2003," seeking "an earlier onset date of disability" (*i.e.*,
between June, 2002 and December 31, 2002).[37]  The Commissioner correctly notes that the only
medical evidence of record bearing dates within the focus of plaintiff's appeal (*i.e.*, June 19,
2002 to December 31, 2002) is the October 27, 2002 report of Dr. Miljana Mandich.

Dr. Mandich accurately notes Waters' medical history, to wit: poorly controlled high
blood pressure, chronic renal insufficiency, and gouty arthritis "on and off for several years,"

---

[35]*See* ALJ John R Burgess Decision dated June 18, 2002 (finding no disability through the
date of decision and no documentation in the record proving plaintiff experiences an inability to
function for a week after each gout attack) [Adm. Rec. 37].

[36]*See* ALJ Gary L. Vanderhoof's Decision dated March 24, 2004 [Adm. Rec. 21].

[37]*See* Plaintiff's Motion for Summary Judgment at p. 3 [Fed. Rec. Doc. No. 11].

with symptoms in the affected joints relieved within a day or two by Indocin.[38]  Regarding his

physical examination, the only abnormalities noted were: (1) "abdomen is obese and there is a

small reducible umbilical hernia;" and (2) "the right knee is slightly hypertrophic and measures

one inch more in circumference than the left knee" "with three surgical scars" and "range of

motion of the right knee from 0 to 130 degrees."[39]  Dr. Mandich observed a normal appearance

and range of motion of all other joints.  Moreover, she reported that all other systems showed no

abnormalities, including neurological, mental status, skin/hair/nails, genitourinary, ears, nose,

mouth, neck, chest, spine and back, cardiovascular, arteries/veins and lymphatic system.

Regarding his gait, Dr. Mandich noted that the plaintiff walked with self-support, had

normal range of motion of the neck and low back and was able to walk on his heels and toes. She

further indicated that plaintiff could squat two-thirds of the way down and rise without support.

Dr. Mandich specifically noted that the plaintiff did not complain of any back pain at the time of

the physical examination.[40]

An electrocardiogram demonstrated a regular sinus rhythm with a rate of fifty beats per

minute.  Dr. Mandich did observe "a leftward axis and deep t wave inversions" and further noted

"consider left ventricular hypertrophy, strain and/or ischemia."[41]  Her diagnoses were:

"1. Hypertension
 2. Chronic renal insufficiency by history of unknown severity.

---

[38]*See* Consultative Report of Dr. Miljana Mandich dated October 27 2002 [Adm. Rec. 112].

[39]*Id.* [Adm. Rec. 115].

[40]*Id.* [Adm. Rec. 114-115].

[41]*Id.* [Adm. Rec. 115].

3. Gouty arthritis by history asymptomatic at this time.
4. History of injury to right knee 17 years ago and three open surgeries,
   the last one in 1995.
5. Periodic discomfort in the right knee and mildly decreased range of motion
   of the right knee."[42]

Dr. Mandich summarized her findings regarding plaintiff's condition in October of 2002

as follows:

This 53-year-old black male has been on high blood pressure medications for
about eight years and reports that his blood pressure is always poorly controlled.
He also reports that he has chronic renal insufficiency and has been seeing a
kidney specialist and because of that he was told that he might need dialysis in the
future but not imminently.  The patient has gouty arthritis for several years and
take Allopurinol daily.  Every few months, he gets an acute attack in one of the
joints, usually one of the great toes, on of the ankles or occasionally one of the
knees.  The acute attacks subside fairly quickly with Indocin.  He suffered an
injury to the right knee 17 years ago and has had three open surgeries, the last one
in 1995.  He reports some discomfort in the right knee in cold weather with
prolonged walking and climbing.  He has a low backache off and on with
prolonged stooping and lifting and also prolonged standing and walking and there
is stiffness after prolonged sitting.  There is no history of transient ischemic
attacks, strokes, heart attack or chest pains.

On physical examination, the patient ambulates without difficulty and is moderately
overweight.  His blood pressure is 156/110 with a regular cuff.  The rest of the
cardiovascular examination is unremarkable.  Chest and lungs are normal.  Spine and
back examination is normal at this time with no complaints.  Extremities are normal
except for the three surgical scars on the right knee, which is slightly hypertrophic and
has mildly limited flexion to about 130 degrees.  The rest of the physical examination is
unremarkable.[43]

The medical evidence from treating sources relevant to the determination that the plaintiff

was capable of returning to his past relevant work on or prior to December 31, 2002 post-dates

the pertinent time frame.   It is clear from the medical record that Waters' condition was vastly

---

[42]*Id.* [Adm. Rec. 115-116].

[43]*Id.* [Adm. Rec. 116].

altered as a result of a stroke that he suffered in July of 2003 (*i.e.*, six-months after his insured status had expired).

Memorial Medical Center's Discharge Summary dated July 25, 2003 indicates that Waters was admitted to the hospital on July 18, 2003 with complaints of dizziness/nausea and staggering and tending to lean to his left. Plaintiff's blood pressure was out-of-control, he was experiencing numbness on the right leg and left cheek. Scans of head showed chronic ischemia change, *i.e.*, extensive deep white matter changed within the supra tentorial brain consistent with alteration secondary to chronic diffuse ischemia with mild to moderate generalized atrophy.[44]

On December 8, 2003, Dr. Wise issued an opinion regarding the plaintiff's condition, to wit:

> Mr. Calvin Waters has been a patient of mine since before 11/14/2000. He suffers several medical problems including labile hypertension (difficult to treat), chronic renal failure, gout, chronic back pain, generalized anxiety, obesity and chronic sinusitis.
>
> *Unfortunately, with the many risks that Mr. Waters has, he suffered a CVA (stroke) in July 2003. This has caused him to have chronic dizziness and numbness as well as neuropathy affecting his right leg with decreased ability to control the movements in this leg.*
>
> *It is for the above reasons that Mr. Waters* **should be <u>approved</u> for <u>social security.</u>** From my medical standpoint, he should qualify without any problem.
>
> Please call if you have any questions or further information is needed.[45]

It is uncontroverted that, with the exception of one consultative examination performed at

---

[44]*See* Memorial Medical Center Discharge Summary dated July 25, 2003 [Adm. Rec. 140].

[45]Opinion of Dr. John M. Wise dated December 8, 2003 (italcized emphasis added/bolding and underlining emphasis in original) [Adm. Rec. 134].

the request of the Social Security Administration, during the pertinent time frame (between June of 2002 and July of 2003) plaintiff did not seek medical treatment and there are no medical records evidencing treatment or examination of the plaintiff by any of his treating physicians (including Dr. Wise).   Nevertheless and apparently at plaintiff's counsel's request, after ALJ Vanderhoof's March 26, 2004 decision issued finding the plaintiff <u>not</u> disabled *at any time prior to his July 18, 2003* report, Dr. Wise issued a one-sentence opinion, stating: "To Whom It May Concern:  Having reviewed my medical assessment form executed on September 3, 2003, I find that, as of December 31, 2002, my answers would have been about the same."[46]

Aside from stating that, "[w]e found that this information does not provide a basis for changing the ALJ's decision,"[47] the Appeals Council failed to address the additional medical opinion provided by plaintiff's treating physician.

### B. Hearing Testimony

Plaintiff was fifty-four years old at the time of the hearing.  He completed the eighth grade and attended welding school.[48]   Waters testified that he quit welding several years prior to the hearing because it was hazardous to his health and began security work.[49]   He stopped working as a security guard in the year 2000.  Plaintiff testified that he had a valid driver's

---

[46]*See* Dr. Wise's Correspondence dated April 24, 2004 (submitted to the Appeal's Council on May 19, 2004 together with his September 3, 2003 assessment noting that plaintiff suffered a stroke in July of 2003, *inter alia*) [Adm. Rec. 355-357].

[47]*See* Notice of Appeals Council Action dated December 23, 2004 [Adm. Rec. 4].

[48]Transcript of December 9, 2003 Hearing  (plaintiff explained that the notation on his disability application that he completed 10th grade is incorrect) [Adm. Rec. 363-364, 382].

[49]*Id.* [Adm. Rec. 364-365].

license but let it lapse after he had his stroke. He gets out of the house approximately three time

a week to either go to the grocery store or the doctor's office. Waters indicated that he needs no

assistance bathing or taking care of his personal needs.

Waters admitted that his major complaint prior to his stroke in July of 2003 was high

blood pressure, gout and renal insufficiency. When he had the stroke, it made him dizzy. Waters

testified that he spent six days in Memorial Medical Center Hospital after his stroke and Egan

provided follow-up home health care services. Waters' residual impairments from the July 18,

2003 stroke include right-sided weakness, which made it necessary for him to ambulate with the

assistance of a cane.[50] Additionally, post-CVA, plaintiff began experiencing burning pain and

numbness in his right leg. Plaintiff testified that he experienced dizziness at all times and began

to have trouble with his concentration. After the stroke, he could not qualify for a driver's

license, but his speaking difficulty eventually resolved. Regarding his kidneys, Waters testified

that Dr. Lima recently informed him that he would be on dialysis before the end of the year.

## V. ALJ's FINDINGS

Plaintiff had not engaged in substantial gainful activity since the date of alleged onset.

The ALJ determined that the medical evidence indicates that the claimant has hypertension, renal

insufficiency, gouty arthritis and knee problems. Additionally, the ALJ found at Step 2 that *in*

*July of 2003*, plaintiff experienced a cardio-vascular accident (CVA/stroke), which was related to

his problems with hypertension. ALJ Vanderhoof determined that all of the aforesaid

impairments are considered "severe," however, the claimant does not have an impairment or

combination of impairments which meet or equal any impairment listed in Appendix 1, Subpart

---

[50]*Id.* [Adm. Rec. 383].

14

P, Regulation No. 4.

The ALJ found that the plaintiff's assertions were only partially credible, *i.e.*, his allegations regarding his inability to work after his July 18, 2003 stroke. The ALJ found that, prior to July 18, 2003, Waters had a residual functional capacity for a limited range of "light" and "sedentary" work and that he was able to perform his past relevant work as a security guard.

The ALJ explained:

> Mr. Waters' case has been adjudicated through June 18, 2002 and I find no reason to disturb the previous determination. He was given a consultative examination in October 2002 by M. Mandich, M.D. Mr. Waters described a number of medical conditions including hypertension, renal insufficiency, gouty arthritis and knee problems. Mr. Waters ambulated without difficulty. His blood pressure was elevated. His right knee was slightly hypertrophic and mildly limited in flexion. Mr. Waters experienced discomfort in cold weather. He also stated he experienced back pain with prolonged standing and walking and stiffness after prolonged sitting. The rest of his physical examination was unremarkable (Exhibit B2F5). These findings fail to support the presence of significant problems affecting Mr. Waters' ability to work at the time of his alleged onset date. His problems with gout were transitory and responsive to medication. Even in combination, his history of renal insufficiency, hypertension, and mild knee problems did not impose cumulative functional deficits which would reasonably translate into disabling limitations at that time. The state agency medical consultants considered Mr. Waters as capable of performing "light" work which did not require climbing ladders, ropes and scaffolds and I find no basis to disagree with this general assessment. He is able to lift at least ten pounds frequently and twenty pounds occasionally. However, I have added additional restrictions from balancing and cold temperature extremes. Also, an accommodation that Mr. Waters be allowed positional changes in any potential vocational environment and he should not be required to walk over three blocks at any one time. This comports with limited ranges of "light" and "sedentary" work. The vocational expert testified Mr. Waters' past work as a security guard would not be contradicted for an individual of his age, education, vocational profile and such a residual functional capacity. I adopt this testimony, and find that prior to July 18, 2003, Mr. Waters was capable of performing his past relevant work as a security guard.
>
> However, on July 18, 2003 Mr. Waters presented to the emergency room with complaints of dizziness and nausea. He was ultimately diagnosed as experiencing a CVA related to his high blood pressure (Exhibit B7F4). Late that month a

physical assessment inventory documented significant limitations in Mr. Waters' ability to perform routine activities (Exhibit B8F).  Treating physician **J. Wise, M.D. reported in December 2003 that Mr. Waters' CVA has imposed residual chronic dizziness, numbness, as well as a neuropathy affecting his right leg** (Exhibit B5F).  He has assessed specific functional limitations contradicting sustained work activities at even the "sedentary" level.  *At this point the medical evidence supports the presence of limitations which contradict an ability to conduct and sustain substantial gainful activity.*  In reaching these conclusions, I have considered Mr. Waters' subjective allegations and have found them generally credible in light of the later onset date established in this decision.  His description of his condition prior to this date does not reconcile with objective evidence and is afforded less evidentiary weight.  Consideration and concurrence has also given to the report of the state agency medical consultants.  However, Mr. Waters' CVA occurred after their determinations were rendered.

Mr. Waters' former work requirements as a welder and security guard are contradicted by his post-CVA symptoms of chronic dizziness, numbness and neuropathy affecting his right leg. I there find that he is unable to perform his past relevant work....

\* \* \*

Born August 29, 1949, Mr. Waters was fifty-three years old on July 18, 2003 [i.e., "closely approaching advanced age"]. He ... has no readily transferable job skills.

Following his CVA, Mr. Waters' capacity for the performance of even "sedentary" work has been reduced by limitations that narrow the range of work he can perform and render it impossible for him to adjust to any job. A finding of "disabled" is therefore reached within the framework of medical-vocational rule 201.10 *commencing on July 18, 2003.*[51]

The evidence supports a finding that the claimant's disability DID NOT begin on or before December 31, 2002, the date insured status expired.[52]

## VI. ANALYSIS

### A. Treating Source's Statements and Determinations

Ordinarily, the opinions, diagnoses and medical evidence of a treating physician who is

familiar with the claimant's injuries, treatment and responses should be accorded considerable or

---

[51] ALJ Vanderhoof's March 26, 2004 Decision (all emphasis added) [Adm. Rec. 22].

[52] *Id.* (emphasis in original) [Adm. Rec. 22].

great weight in determining disability.[53]   The ALJ may assign less weight to a treating physician's opinion when there is good cause shown to the contrary.  "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence."[54]  The opinion of a specialist is generally accorded greater weight than a non-specialist.[55]

The ALJ is not at liberty to reject a medical opinion without giving an explanation and is not at liberty to make a medical judgment regarding the ability or the disability of a claimant to engage in gainful activity where such inference is not warranted by clinical findings.[56]  Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status.[57]  Treating physicians' opinions are not conclusive regarding matters reserved to the Commissioner.[58]   Good cause may permit the ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by clinical findings, or is otherwise unsupported by the evidence.[59]

---

[53]See Loza v. Apfel, 219 F.3d 378, 395 (5th Cir. 2000); Newton, 209 F.3d at 455.

[54]Newton, 209 F.3d at 455 (citations and inner alterations omitted).

[55]Id. (citing Paul v. Shalala, 29 F.3d 208 211 (5th Cir. 1994).

[56]Loza, 219 F.3d at 395.

[57]Newton, 209 F.3d at 456.

[58]Id. (citing Brown, 192 F.3d at 500).

[59]Id.

17

As restated by the Fifth Circuit in *Newton*:

SSA Regulations provide that the SSA "will always give good reasons in [its]
notice of determination or decision for the weight [it gives the claimant's] treating
source's opinion" and list factors an ALJ must consider to assess the weight to be
given to the opinion of a treating physician when the ALJ determines that it is not
entitled to "controlling weight."  See 20 C.F.R. § 404.1527(d)(2).  Specifically,
this regulation requires consideration of:
(1) the physician's length of treatment of the claimant,
(2) the physician's frequency of examination,
(3) the nature and extent of the treatment relationship,
(4) the support of the physician's opinion afforded by the medical evidence of
record,
(5) the consistency of the opinion with the record as a whole; and
(6) the specialization of the treating physician.
The regulation is construed in Social Security Ruling ("SSR") 96-2p, which states:
[A] finding that a treating source medical opinion is not well supported by
medically acceptable clinical and laboratory diagnostic techniques or is
inconsistent with the other substantial evidence in the case record means only that
the opinion is not entitled to "controlling weight," not that the opinion should be
rejected.  Treating source medical opinions are still entitled to deference and must
be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.
In many cases, a treating source's medical opinion will be entitled to the greatest
weight and should be adopted even if it does not meet the test for controlling
weight.[60]

The Fifth Circuit requires that an ALJ consider each of the § 404.1527(d) factors before

declining to give any weight to the opinions of the claimant's treating specialist.[61]   Here, the ALJ

fully performed this analysis regarding all of the medical evidence presented.  Most notably, the

ALJ fully credited Dr. Wise's  September 3, 2003 functional assessment.[62]

---

[60]*Newton*, 209 F.3d at 456.

[61]*Id.*

[62]*See* Dr. Wise's Functional Assessment dated September 3, 2003 (specifically noting the
plaintiff suffered a stroke in July of 2003) [Adm. Rec. 132-133]; Dr. Wise's opinion dated
December 8, 2003 (also specifically noting that plaintiff suffered a stroke in July of 2003 that
caused severe residual functional limitations and that, because of same in addition to other
medical problems, plaintiff should have no difficulty qualifying for social security benefits)

As in *Newton*, this is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another. Nor is this a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion. Instead, this is a case where the ALJ credited the opinion of plaintiff's treating physician and found him disabled with the onset date adjusted to coincide with the plaintiff's stroke and concomitant debilitating residual functional restrictions.

This Court recognizes that the regulations provide: "We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."[63]  However, there was no ambiguity or conflict for the ALJ to resolve. Dr. Wise's reports dated September 3, 2003 and December 8, 2003 were crystal clear and his opinion regarding "disability," an issue reserved to the Commissioner, was patently predicated on plaintiff having suffered a stroke in July of 2003.

It is undisputed that the burden to prove disability in a social security case is on the claimant. The Court further recognizes that a social security disability hearing is nonadversarial, and the ALJ bears the responsibility to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. Generally, the ALJ has a duty to develop the record by obtaining the pertinent, available medical records. The ALJ has the power to subpoena

---

[Adm. Rec. 134].

[63]*Id.*

19

such records if necessary.[64]  If the ALJ does not have before him sufficient facts upon which to make an informed decision, his decision is not supported by substantial evidence.[65]  In this case, the ALJ had sufficient facts upon which to make an informed decision and the ALJ's determination is fully explained and well-supported by substantial evidence.

## B.  Appeals Council's Error

The Court now turns to Dr. Wise's correspondence dated April 24, 2004, which was submitted post-decision to the Appeals Council.  Dr. Wise's April 24, 2004 one-sentence opinion simply states (without any explanation) that his September 3, 2003 functional assessment applies *nunc pro tunc* to the period predating the plaintiff's July, 2003 stroke.[66]  The Court recognizes that this correspondence issued at plaintiff's counsel's request post-hearing decision.  However, the April 24, 2004 opinion directly contradicts  Dr. Wise's December 8, 2003 opinion, which clearly predicates qualification for benefits upon the fact that his patient "suffered a CVA (stroke) in July of 2003" and explains that the stroke "caused [Waters]  to have chronic dizziness and numbness as well as neuropathy affecting his right leg with decreased ability to control the movements in this leg."[67]

The Appeals Council denial dated December 23, 2004, merely states:

---

[64]20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1).

[65]*See Harris v. Massanari,* 2002 WL 10466 *3 (E. D. La.) (Vance, J.) (*citing McGee v. Weinberger,* 518 F.2d 330, 332 (5th Cir. 1975).

[66]*See* Dr. John M. Wise's "To Whom It May Concern" Correspondence dated April 24, 2004 [Adm. Rec. 355].

[67]*See* Dr. John M. Wise's December 8, 2003 Report [Adm. Rec. 134].

In looking at your case, we considered the reasons you disagree with the decision and the material listed on the enclosed Order of Appeals Council (letter dated April 24, 2004 from John Wise, M.D. attached to a letter dated May 19, 2004 from representative Paul Brian Spurlock).

We found that this information does not provide a basis for changing the ALJ's decision.[68]

The Appeals Council does not begin to explain the lack of weight given to Dr. Wise's conclusory assessment (*i.e.*, "about the same").  The Court recognizes that: (1) the Fifth Circuit has made it clear that the Commissioner is not obligated to accept conclusory findings of any doctor, including a treating physician, or to grant such an opinion controlling weight where, as here, the findings are not supported and/or are clearly contradicted by substantial evidence of record;[69] and (2) conflicts in the evidence are for the Commissioner to decide.  However, the Appeals Council's summary rejection of Dr. Wise's  updated opinion letter with no explanation fails to comport with the governing regulations.

Social Security Regulations provide that the Appeals Council must "follow the same rules for considering opinion evidence as administrative law judges follow."[70]  This Court agrees with those courts that have held that when the Appeals Council considers new evidence that was not available to the ALJ, the Appeals Council must justify its decision to reject that evidence with more than a *pro forma* statement that the evidence does not warrant changing the ALJ's

[68]*See* Notice of Appeals Council Action dated December 23, 2004 [Adm. Rec. 4].

[69]*See Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001).

[70]20 C.F.R. § 404.1527(f)(3).

21

decision.[71]

The Appeals Council therefore should have justified its decision to reject Dr. Wise's April 24, 2004 updated opinion pursuant to the factors listed in 20 C.F.R. § 404.1527(d), such as the length and extent of the treatment relationship between claimant and the doctor, the frequency of examination, the doctor's specialization in the area of treatment, and the extent to which the doctor's opinion is supported or contradicted by other evidence in the record. The Appeals Council's rejection of this evidence without explanation constitutes reversible error.

The problem that exists with respect to Dr. Wise's revised opinion is that he refers to Waters' condition prior to the date upon which his disability insured status expired (i.e., December 31, 2002). This is the relevant period for purposes of disability insurance benefits, which were denied.   If Dr. Wise's revised opinion applies to the specific time period at issue, and his opinion is given proper weight considering his treatment relationship with Wise, then the ALJ's RFC assessment, as reflected in the hypothetical questions posed to the VE, did not accurately encompass all of Wise's limitations.

Based upon the current record, the court is unable to say unequivocally that Waters' was disabled as of July, 2002. The court therefore finds it appropriate to remand this case to the Commissioner for further proceedings, including consideration/analysis of Dr. Wise's April 24, 2004  opinion, obtaining further clarification and/or treatment records from the doctor regarding

---

[71]*See e.g., Hawker v. Barnhart*, 235 F.Supp.2d 445, 452 (D.Md.2002) ("[I]f the Appeals Council ostensibly considers evidence submitted post-ALJ hearing and that evidence is part of the administrative record, ... then a duty of explanation is necessary·..."); *Speights v. Barnhart*, 2004 WL 3331910 * 9 (M. D. La.) (quoting *Hawker*, noting that "requiring the Appeals Council to explain its handling of evidence is neither a novel concept nor a burdensome obligation" and finding "no shortage of reported cases in which the Appeals Council provided reasoning as to why newly submitted evidence was rejected").

the time period represented by that opinion and, if necessary, further testimony by a vocational expert that takes into consideration all of Waters' impairments and limitations.

The Court remains mindful that the Commissioner has the exclusive prerogative to weigh evidence and resolve conflicts, and further acknowledges that judicial review is both highly deferential to the Commissioner and limited in scope. The Court does not purport to direct a particular ultimate outcome upon remand. Therefore, upon remand, the Commissioner will be free to re-examine all issues in light of the applicable standards discussed hereinabove.

## VII. CONCLUSION

Based upon the foregoing discussion of the issues, evidence and the law, the undersigned Magistrate Judge recommends that the Commissioner's Motion for Summary Judgment be DENIED, the Commissioner's decision be REVERSED and the case be REMANDED for further proceedings consistent with this report.

## OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) *(en banc).*

New Orleans, Louisiana, this 31st day of March, 2006.

DANIEL E. KNOWLES, III
**UNITED STATES MAGISTRATE JUDGE**